```
                UNITED STATES BANKRUPTCY COURT
                FOR THE NORTHERN DISTRICT OF IOWA
                        WESTERN DIVISION
```

IN RE:

SCOTT ALLEN PEDERSON                               Chapter 13
BARBARA J. PEDERSON

    Debtors.                             Bankruptcy No. 06-00635S


## DECISION RE: PLAN CONFIRMATION

    Scott and Barbara Pederson seek confirmation of their proposed chapter 13 plan. Trustee Carol F. Dunbar objects. Hearing on confirmation was held September 19, 2006 in Sioux City. Donald H. Molstad appeared as attorney for the Pedersons. Carol F. Dunbar appeared on her own behalf. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

    Pedersons filed their chapter 13 petition on June 20, 2006. They filed their proposed plan on June 28, 2006 (docket no. 11). Pedersons live in Mapleton, Iowa. Scott is employed by MidAmerican Energy at its power plant at Port Neal North. He is a fuel handling technician. Barbara is a loan clerk for First State Bank in Mapleton. The couple has two children, a son, age 15, and a daughter, age 6.

    Pedersons' plan proposes to pay to the trustee $815.69 per month for 14 months, and then, after payment in full of a secured debt on their pickup truck, they propose to pay $1,039.08 per month to the trustee for the remaining 46 months of the plan. The plan is based on the debtors' estimate of monthly income as

shown on their schedule I, filed with their petition. The gross income from their employments totals $6,897.90 (Schedule I). The schedule shows deductions from gross income in the amounts of $1,429.98 for payroll taxes and social security, $195.36 for health insurance, and $55.50 for union dues. Net monthly income, according to Schedule I, is $5,217.06.

The expenses on debtors' schedule J and on the plan's Cash Flow (exhibit B to the Plan) show the same categories of expenses in the same amounts. The total current monthly expenses are estimated at $4,401.37. One of the monthly expenses is transportation expense in the amount of $620.00 per month. Net income is estimated in schedules I and J and in the plan's cash flow form as $815.69, the proposed monthly plan payment for the first 14 months.

The trustee objects to confirmation and raises two issues. First, she contends that the required monthly plan payment under the Bankruptcy Code is $1,171.60, and second, that debtors have failed to justify transportation expenses of $620.00 which is in excess of the National and Local [expense] Standards issued by the Internal Revenue Service. These standards are incorporated in the disposable income plan requirements of chapter 13 by 11 U.S.C. §§ 1325(b) and 707(b)(2), for cases filed after October 17, 2005.

Official Bankruptcy Form B22C, filed with debtors' petition,

2

shows total gross income for the debtors as $7,667.71.  This figure includes no deductions for taxes or other amounts withheld from their paychecks.  Part IV of Form B22C shows the deductions allowed under 11 U.S.C. § 707(b)(2).  As previously stated, the deduction categories are derived from and determined by the Internal Revenue National and Local Standards for collection of taxes.  Pedersons' total deductions to determine disposable income under 11 U.S.C. § 1325(b)(2) are $6,496.11.  Disposable income calculated by Pedersons, using form B22C, is $1,171.60.  One of the deductions is the cost of transportation, not including the cost of ownership of motor vehicles (see line 27, form B22C).  The IRS transportation local standard would permit a deduction of $358.00 for the operation of two motor vehicles.  Pedersons assert that because of the condition of the cars and the cost associated with commuting to work, $620.00 should be permitted.

   Pedersons' proposed plan differs from the calculation of disposable income as shown on line 58 of their form B22C.  As to income, form B22C shows joint gross income of $7,667.71 and at line 30 deductions for taxes of $1,693.36, resulting in net income after taxes of $5,974.35.  The plan shows gross income of $6,897.90 with tax withholdings of $1,429.98, for net income after taxes of $5,467.92.  The difference between form B22C and the plan as to net income after withholding taxes, in the amount

of $506.43 per month, is not precisely explained.  Schedule I, line 17, explains, as required, any increase or decrease in income that is reasonably anticipated as follows: "OT that husband has received over the last 2.5 years was to install equipment for employer that will eliminate most if not all overtime offered at his job beginning as early as this summer." (Schedule I, line 17.)  However there was no indication in the plan or in the testimony if this is the reason for the difference between the plan's income figures and the historical income figures shown in form B22C.  No post-petition payment advices were offered into evidence.

The expenses and debt repayments shown in form B22C, but not including tax withholding, total $4,802.75.  These would include certain expenses, such as union dues, that are deducted from Scott Pederson's gross pay.  The plan's cash flow exhibit shows $4,401.37 in monthly expenses.  To this I will add health insurance of $195.36 and union dues of $55.50, both of which are deducted from Scott Pederson's pay check.  The total expenses shown in the cash flow are adjusted to $4,652.23.  Subtracting this figure from Pedersons' net income after taxes, in the amount of $5,467.92, results in monthly disposable income of $815.69.  This is the plan's proposed payment amount.

In comparing the expenses on the plan's cash flow exhibit to the categories of expenses in form B22C, there are differences in

certain types of expenses, where the B22C deductions do not permit use of debtor's actual expenses. Not considering withholding taxes, the total monthly expenses shown in the plan's cash flow are in the adjusted amount of $4,652.23. The total expenses, not including withholding taxes, as shown in Pedersons' form B22C are $4,802.75. The plan's monthly expenses and debt payments are $150.52 less than the expenses and debt payments in form B22C. The trustee does not complain about that. The only dispute as to expenses is that Pedersons are showing transportation expenses in their plan's cash flow of $620.00, notwithstanding the IRS local standard allowance of $358.00 for vehicle operation expenses.

In determining disposable income for above-median income chapter 13 debtors, the court must consider debtors' reasonable and necessary expenses in accordance with 11 U.S.C. § 707(b)(2)(A) and (B). The starting point for disposable income analysis is the amount resulting from form B22C. In re Jass, 340 B.R. 411, 415-16 (Bankr. D. Utah 2006). Under section 707(b)(2)(B) a debtor may demonstrate "special circumstances" to justify additional expenses in rebutting a presumption of abuse under the means test set out in § 707(b)(1). In re Batzkiel, ___ B.R. ___, 2006 WL 2597904 at *3 (Bankr. N.D. Iowa Aug. 7, 2006); In re Jass, 340 B.R. at 418-19. A debtor also may make such a showing of special circumstances in order to depart from the IRS

standards used in determining disposable income for purposes of chapter 13 plan confirmation.

    Pedersons contend that the IRS local standard for operation costs of two vehicles in the amount of $358.00 is too low given their circumstances.  They claim that $620.00 is closer to the accurate costs of operating their two vehicles including gas, repairs, and licensing.

    Scott Pederson drives a 1994 Ford Ranger pickup truck.  As of July 6, 2006, the truck had 192,228 miles of use.  Pederson drives 80 miles round trip from Mapleton to his place of employment.  Barbara Pederson drives a 2002 Chevrolet Trailblazer (Blazer).  As of August 30, 2006 it had 64,345 miles of use.

    For the 22 days from August 29 through September 19, 2006, the couple purchased $268.21 worth of gasoline for the two vehicles.  Considering that 22 days is approximately 72 per cent of a month, I estimate the cost of gasoline for the two vehicles at $372.00 per month.

    Scott Pederson says the pickup has mechanical troubles.  From May 16, 2006 through July 14, 2006, he spent $66.70 on the pickup, and he says it still needs two new tires and two new shock absorbers.  From approximately early May to August 30, 2006, the couple spent $306.86 on the Trailblazer.  The total repairs for these periods was $373.56.  These expenses were incurred over nearly four months.  Because of the age, mileage

and use of the vehicles, I will infer they are reasonable quarterly expenses. Twelve months of such expenses could be estimated at $1,494.00. This averages $125.00 per month. The monthly cost of gas and repairs for the two vehicles might be expected to be $497.00 per month.

Scott Pederson did not know the licensing/registration costs of the two vehicles. He said he included licensing costs in his expense estimate of $620.00 per month.

The dispute between the trustee and debtors over vehicle operation costs should not be considered merely by focusing on vehicle maintenance, repairs and fuel costs. It seems to me that form B22C allocates the costs of owning and operating a vehicle among four sections: lines 27 (operation), 28 (vehicle one ownership), 29 (vehicle two ownership), and 47 (future payment on secured claims). Therefore, I think to resolve this dispute I should consider these costs holistically. First I would point out that nowhere on form B22C does it say where to include the costs of motor vehicle insurance or license and registration costs. Nor does it say where the form includes the costs of debtors' drivers' licenses.

Nonetheless, all these expenses are part of the allowed transportation expenses provided by the IRS National and Local Standards. The Financial Analysis handbook regarding IRS collection standards states that local standards include the

following expenses.

> Transportation.  Vehicle insurance, vehicle payment (lease or purchase), maintenance, fuel, state and local registration, required inspection, parking fees, tolls, driver's license, public transportation.  Transportation costs not required to produce income or ensure the health and welfare of the family are not considered necessary.

Internal Revenue Manual, § 5.15.1.9 (May 1, 2004),

http://www.irs.gov/irm/part5/ch15s01.html.

I find that the costs of operation as shown on line 27 of form B22C includes registration and licensing, vehicle insurance, maintenance, fuel, driver's license, parking fees, and tolls.

Debtors' form B22C permits the following expenses for ownership and operation of debtors' two vehicles:

```
Line 27    vehicle operation                                $   358.00
Line 28    ownership Blazer              $471.00
           less debt payment             -255.38
           net expense:                                         215.62

Line 29    ownership pickup               332.00
           less debt payment              -49.10
           net expense:                                         282.90

Line 47    debt payment: Blazer                                 255.38

Line 47    debt payment: pickup                                  49.10

Total ownership and operation expenses:                      $1,161.00
```

(Form B22C).

The debt repayment amounts are calculated for each vehicle according to the instructions of the form.  As shown on exhibit J and the plan's cash flow, the actual monthly payment for the Blazer loan is $377.00, and the actual monthly payment for the

8

pickup loan is $223.39.  However the total repayment for each as shown on line 47 is the average monthly payment.  The debts on both debtors' vehicles will be paid off before the expiration of the 60-month plan period.  The plan provides for an increased payment to the trustee when the pickup truck debt is paid off.

Debtors' schedule J shows the following vehicle costs of ownership and operation:

|  |  |  |
|---|---|---:|
| Line 8 | transportation | $  620.00 |
| Line 11 | auto insurance | 91.00 |
| Line 13a | Blazer loan payment | 377.00 |
| Line 13b | pickup loan payment | 223.39 |
|  | Total schedule J vehicle costs: | $1,311.39 |

Schedule J.

Beginning in the 15th month of plan payments, after the pickup truck debt has been paid, debtors propose to increase plan payments by $223.39.  In comparing B22C with schedule J and the plan, I find that B22C allows total ownership and operation expenses of $69,660.00 over the life of the plan and schedule J provides for $68,407.46.  This is some indication that debtors are not overreaching on their transportation costs.

As to the expenses shown on schedule J and dealt with at the confirmation hearing, I find the following.  The amount of $497.00 per month has been justified by debtors as reasonable for fuel and maintenance for the two vehicles.  There appears to be no dispute as to the cost of vehicle insurance in the amount of $91.00 per month.  Based on my knowledge of costs of

9

registration, I estimate the cost of annual registration of the two vehicles at no more than $300.00, or $25.00 per month.  These monthly costs for operation total $613.00.  I therefore find that $620.00 is reasonable and necessary for vehicle operation, and that figure will be used for determining disposable income and projected disposable income rather than the amount of $358.00 as provided in form B22C.  The trustee's objection to the use of the figure of $620.00 for vehicle operation is overruled.

Trustee objects also that Pedersons are not calculating disposable income using their "current income" figures as required by form B22C and 11 U.S.C. § 1325(b)(2).  For their gross monthly incomes, they are using lower figures as shown in the plan's cash flow and in their Schedule I.  As a result, she argues, their projected disposable income is less than the amount shown as monthly disposable income on line 58 of form B22C.

Because the trustee has objected to confirmation, and the plan does not propose payment in full to creditors holding unsecured claims, the Pedersons' plan must provide that all of their "projected disposable income to be received in the applicable commitment period ... will be applied to make payments to unsecured creditors under the plan."  11 U.S.C. § 1325(b)(1)(B).  Disposable income means "current monthly income received by the debtor" less amounts reasonably necessary to be expended for the maintenance and support of debtor and debtor's

dependents.  11 U.S.C. § 1325(b)(2).  "Current monthly income" is generally the average monthly income from all sources that the debtor receives during the six-month period ending on the last day of the calendar month immediately preceding the date of the commencement of the case.  11 U.S.C. § 101(10)(A).  It is an historical average.

I conclude it is the starting point in determining "projected disposable income" under 11 U.S.C. § 1325(b)(1)(B).  I agree with other courts that conclude that projected disposable income is different from disposable income, and that it is a concept of debtor's income that is forward looking--it is anticipated income during the term of the plan.  See In re Hardacre, 338 B.R. 718, 722 (Bankr. N.D. Texas 2006); In re Jass, 340 B.R. at 415.  Therefore I do not believe that a debtor or a creditor is bound by the "current income" figure in calculating projected disposable income.  Because it is a starting point, a debtor, creditor or trustee may attempt to prove that the historical average is not an accurate measure of the income anticipated to be received during the term of the plan.

The problem with Pedersons' plan proposal is that they have failed to prove why the plan should propose a starting point for gross income in the amount of $6,897.90, rather than the gross income figure of $7,667.71 as shown on line 11 of form B22C.

Debtors would have calculated their gross income as shown on

11

line 2 of form B22C as a six-month pre-petition average using employers' payment advices.  If it was expected that the post-confirmation income would decrease, as is stated in schedule I, debtors might have introduced evidence to support their contention and to show the expected deviation from their historic average.  They did not.  Scott might have called his supervisor as a witness regarding the loss of overtime, or perhaps the trustee would not have objected to an affidavit, or a phone deposition.  Scott might have offered post-petition payment advices and more recent pre-petition payment advices to show the decrease in wages.  He did not.  He failed to prove that an adjustment to income was warranted in calculating projected disposable income.

If I use $7,667.71 as the gross income for determining disposable income, increase transportation expenses by $262.00, and use all other expense figures as stated by Pedersons on their form B22C, the projected disposable income for purposes of a chapter 13 plan is $909.60 per month.

Because Pedersons propose to pay the trustee only the amount of $815.69 per month, their plan cannot be confirmed because it fails to satisfy 11 U.S.C. § 1325(b)(1)B).  Confirmation will be denied.

IT IS ORDERED that confirmation of Pedersons' proposed plan filed June 28, 2006 (docket no. 11) is denied.

DATED AND ENTERED October 13, 2006

William L. Edmonds, Chief Bankruptcy Judge